IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD MCWHIRTER,<br><br>Defendant. | Case No. 24-CR-280 (APM) |

**UNITED STATES' MOTION FOR A DOWNWARD DEPARTURE
AND MEMORANDUM IN AID OF SENTENCING**

For decades, Donald McWhirter owned a business that supplied goods to D.C. Public Schools ("DCPS"), as well as several other D.C. government agencies. Judging by the financial accounting set forth in the Presentence Investigation Report ("PSR"), government contracting served Mr. McWhirter very well, enabling him to become a self-made millionaire. If that were the end of the defendant's story, Don McWhirter would be an example of the American dream. Unfortunately, once the FBI started investigating McWhirter, they learned that he had raked in those millions all while committing fraud against DCPS and paying bribes and kickbacks to two DCPS officials, Dana Garnett and Patricia Bailey. Even worse, the defendant knew it was illegal to pay kickbacks to government officials: he had been convicted in 1993 of bribery based on very similar conduct to the charges at issue in this case. Under any other circumstances, Mr. McWhirter's conduct would justify a period of incarceration.

But the defendant's circumstances are not normal. When he was approached by the FBI, McWhirter immediately accepted responsibility, telling the agents that his behavior "don't look good." McWhirter cooperated and told the FBI the story of how he had been paying Garnett kickbacks for years. As part of his cooperation, McWhirter provided hundreds and hundreds of

1

pages of documents and files that assisted in the FBI's investigation. He also debriefed with the government multiple times and testified at the trial of his former friend and co-conspirator, Garnett. In short, he provided substantial assistance that led to a jury finding Garnett guilty. In addition to his cooperation, Mr. McWhirter is a 74-year-old man with significant health issues. The government does not minimize the severity of the defendant's conduct: he stole tens, if not hundreds of thousands of dollars from D.C. Public School kids, paid kickbacks and bribes to two public officials who were duty-bound to protect the DCPS budget, and banked millions along the way. Don McWhirter is no saint. But given his acceptance of responsibility, substantial assistance, and significant health complications, the government recommends a sentence of ten months of home-confinement, followed by 36 months of supervised release. Such a sentence appropriately balances the 18 U.S.C. § 3553(a) factors and is sufficient but not greater than necessary to accomplish the goals of sentencing.

## BACKGROUND

### A. The Offense Conduct

The Court is well-familiar with the facts of the short-shipping scheme orchestrated by Dana Garnett and Pat Bailey at DCPS. The Court also observed McWhirter's testimony during Garnett's trial, testimony that the jury credited. In broad overview, McWhirter paid bribes and kickbacks to Garnett and Bailey for at least five years. He came up with phony receipts and invoices that entitled him to get paid, despite not delivering all of the goods on a particular order. Or in some cases, despite not delivering any goods whatsoever. McWhirter split the overpayment he received from DCPS for shorted orders with Garnett or Bailey. As he told the jury, when he made these payments, Garnett "rolled down the window . . . I just passed her, [gave] her the money through the window." 6-17-25 Tr. at 204.

### B. McWhirter Pleads Guilty and Testifies at Trial

As noted above, McWhirter eventually pled guilty pursuant to a cooperation plea agreement. *See* GX 702. As part of his plea agreement, the defendant admitted that he had personally received at least $50,000 in ill-gotten gains as part of the DCPS short-shipping scheme. He also admitted that he caused a loss of between $40,000 and $95,000 to the D.C. government. McWhirter testified during Garnett's trial and explained how Garnett had hatched the scheme and introduced him to Bailey. McWhirter also explained various text messages and DCPS paperwork to the jury.

### C. The Sentencing Guidelines

Consistent with the parties' plea agreement, the PSR calculated the Guidelines as follows:

| | |
|---|---:|
| Base Offense Level, U.S.S.G. § 2C1.1(a)(1) | 12 |
| Specific Offense Characteristics | |
|     More than One Bribe, § 2C1.1(b)(2) | +2 |
|     Loss Amount between $40,000 and $95,000 | |
|         § 2B1.1(b)(2)(A)(iii) | +6 |
| Acceptance of Responsibility | -3 |
| Zero Point Offender | -2 |
| **Total Offense Level** | **15** |

Based on a Criminal History Category I, the defendant's estimated Guidelines range as calculated in the PSR is 18 to 24 months of incarceration. *See* PSR ¶ 97.

## ARGUMENT

### A. Applicable Sentencing Framework

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings

3

by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Although the Guidelines are advisory, they are nevertheless "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id*. at 49. Accordingly, they are the "starting point and the initial benchmark" for sentencing. *Id*. The government agrees that the PSR correctly calculated the estimated Guidelines range to be 18 to 24 months of incarceration.

After calculating the applicable Guidelines range, the Court must then consider the applicable factors set forth in 18 U.S.C. § 3553(a). The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the Guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

**B.    Defendant's Substantial Assistance**

The government seeks a downward departure under § 5K1.1 of the Guidelines based on the defendant's substantial assistance. The defendant effectively confessed to the FBI and agreed to cooperate the first time they met with him. He subsequently debriefed with the government multiple times and entered into a plea agreement. He also provided several tranches of documents from his own email and paper files that eventually became exhibits at trial. Finally, McWhirter met with the government multiple times, which gave the government ample time to probe the

4

credibility of his information and the reliability of his potential testimony. The jury likewise observed McWhirter's testimony and credited it. Given McWhirter's cooperation and the factors set forth under U.S.S.G. § 5K1.1(a), the government recommends the Court grant a 6-level downward departure, which results in an offense level of 9. Such a downward departure corresponds to a revised Guidelines range of 4 to 10 months of incarceration.

  C.  The § 3553(a) Factors

Don McWhirter fabricated purchase orders and invoices so that he and his co-conspirators could steal money from D.C. Public School kids. To be sure, McWhirter accepted responsibility and cooperated, conduct that is noteworthy and commendable. But stealing taxpayer dollars by defrauding DCPS is shameful, particularly since McWhirter had made a lot of money and had the wherewithal to stand up to Dana Garnett when she demanded payments from him. Unlike Duane King and Yelake Meseretu, both of whom were new business owners hustling and trying to work hard to prove themselves, McWhirter had been making money doing government contracting for years. And to make matters worse, he knew his conduct was wrong. He had gotten caught before and pled guilty to bribery. That said, the Court must also consider the defendant's personal history and characteristics. Taking his age and medical issues into account, the government submits that a 10-month period of home confinement followed by 36 months of incarceration appropriately balances the § 3553(a) factors.

### 1. The Nature and Circumstances of the Offense

First, the nature and circumstances of the offense would otherwise justify a period of incarceration. As a product of the D.C. Public School system himself, the defendant surely understood that public school children in D.C. are among the most vulnerable and underserved populations in the District. By stealing from DCPS, the defendant financed a handsome lifestyle

for himself. His conduct was serious and warrants incarceration. Absent his cooperation and medical issues, the government would have asked for incarceration to reflect the seriousness of his conduct.

### 2. The Need for Deterrence and to Promote Respect for the Law

Second, the Court's sentence must also promote the rule of law, provide just punishment, and provide adequate deterrence. Sending a strong message is especially important in white-collar cases involving the public fisc. Along with white-collar crime, public corruption cases are "prime candidates for general deterrence" because they often are "more rational, cool, and calculated than sudden crimes of passion or opportunity." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citations omitted). As this case demonstrates, grift in the government procurement space is unfortunately all too common. Many vendors doing business with government agencies consider paying bribes and kickbacks to be a cost of doing business. And many public officials believe that they are entitled to skim a little off the top. Deterrence would otherwise weigh in favor of a period of incarceration.

### 3. The History and Circumstances of Defendant

Finally, although McWhirter's history and characteristics do not excuse his behavior or mitigate his culpability. To the contrary, McWhirter knew the risk of paying kickbacks and forged ahead anyway. Every time he paid a bribe, he knew he was breaking the law. He knew he was stealing from DC Public School kids. And he knew he was could get caught.  He paid Garnett and Bailey kickbacks anyway. You do not get to be a millionaire without taking risks and paying the cost of doing business.

Mr. McWhirter, however, is an older man who has battled (and continues to battle) cancer and other health problems. Of all of the participants in the scheme, he is the least culpable, both in

terms of amount of loss he caused to DCPS as well as the degree of control he exercised in the scheme. Because of these facts, the government agrees that the defendant's history and characteristics weigh against a period of incarceration.

### C. Restitution and Forfeiture

McWhirter's criminal conduct is governed by the Mandatory Victims Restitution Act, 18 U.S.C. §3663A ("MVRA"), and accordingly, the Court must impose restitution. As part of his plea agreement, McWhirter agreed that the loss he caused to the D.C. government as a result of the bribes he paid to Garnett, and Bailey was at least $40,000. Given the difficulties in determining a precise loss amount, the government submits that $40,000 is a reasonable figure for purposes of setting restitution. With respect to forfeiture, the plea agreement specified that McWhirter received at least $50,000 personally as a result of the offense. That figure therefore makes sense as a reasonable amount the defendant should be required to forfeit. The government has attached a draft Consent Order of Forfeiture to this Sentencing Memorandum. Assuming the defendant agrees, the parties will execute and provide a signed copy of the Order to the Court prior to the Sentencing Hearing.

### CONCLUSION

WHEREFORE, for the foregoing reasons, the Government respectfully submits that a sentence of 10 months of home detention, followed by 36 months of supervised release, is a just and appropriate sentence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: /s/*Christopher R. Howland*
Christopher R. Howland
Assistant United States Attorney
Fraud, Public Corruption, & Civil Rights

7

D.C. Bar No. 1016866  
601 D Street, N.W.,  
Washington, D.C. 20530  
202-252-7106  
Christopher.Howland@usdoj.gov